09-3717-pr
Carrion v. Smith

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**<u>AMENDED SUMMARY ORDER</u>**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 11ᵗʰ day of February, two thousand ten.

Present:
> PIERRE N. LEVAL,
> CHESTER J. STRAUB,
> RICHARD C. WESLEY,
> *Circuit Judges.*

_____

CARLOS CARRION,

*Petitioner-Appellee,*

- v. -                                                      No. 09-3717-pr

JOSEPH SMITH, Superintendent of Shawangunk Correctional Facility,

*Respondent-Appellant.*

_____

FOR THE PETITIONER-APPELLEE:    MARJORIE M. SMITH, Piermont, NY (*on the brief*, Michael W. Martin, Laura DeRossi (Legal Intern), Lani Medina (Legal Intern), Fordham University School of Law, New York, NY).

FOR THE RESPONDENT-APPELLANT:   MARY C. FARRINGTON, Assistant District Attorney (*on the brief*, Morrie I. Kleinbart, Special Assistant District Attorney), for Cyrus R. Vance, Jr., District Attorney, New York County, New York, NY.

**AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Respondent-Appellant appeals from an Opinion and Order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*), dated August 12, 2009, granting Petitioner-Appellee's Petition for habeas corpus relief on the basis of ineffective assistance of counsel, vacating Petitioner's several convictions, with the exception of criminal possession of a controlled substance in the first degree, and ordering that Petitioner's term of imprisonment be reduced from 125-years-to-life to ten-years-to-life. *Carrion v. Smith*, 644 F. Supp. 2d 452 (S.D.N.Y. 2009).

We assume the parties' familiarity with the underlying facts and procedural history of the case, as well as with the issues on appeal. Over seventeen years ago, Petitioner was charged in New York state court with one count of criminal possession of a controlled substance in the first degree, ten counts of attempted murder in the first degree, ten counts of attempted murder in the second degree, one count of criminal use of a firearm in the first degree, two counts of criminal possession of a weapon in the third degree, and one count of reckless endangerment in the first degree. These charges stemmed from Petitioner's purchase of a large amount of cocaine and an ensuing gun fight with the police. During his attempt to evade arrest, Petitioner fired his gun at the police officers, shooting one of the officers in the arm. Petitioner was eventually shot several times by the officers and was rendered a paraplegic as a result of the injuries he sustained that day.

After he was indicted, the prosecution offered Petitioner a plea deal. Although the exact terms of the plea offer are uncertain, it is clear that the offer would have allowed Petitioner to plead guilty to criminal possession of a controlled substance, either in the first degree or second degree, and allocute to the entire indictment in exchange for an indeterminate sentence of imprisonment of ten years to life. Petitioner declined the offer and proceeded to trial. On October 19, 1993, the jury convicted Petitioner of five counts of attempted murder and the remaining charges. On December 10, 1993, the state court sentenced Petitioner to an aggregate indeterminate prison term of 125 years to life.

On February 8, 2004, Petitioner filed this Petition for habeas corpus relief alleging, *inter alia*, ineffective assistance of counsel in connection with the advice his defense counsel provided him regarding the prosecution's plea offer. The District Court referred the matter to Magistrate Judge Frank Maas, who held an evidentiary hearing on February 6, 2006. Petitioner testified at the hearing that his defense counsel failed to advise him of his sentencing exposure if convicted at trial or provide any other advice regarding the plea deal, other than stating its terms and that it was a "good" offer. *See Carrion v. Smith*, 549 F.3d 583, 586 (2d Cir. 2008). Petitioner's defense counsel testified that he had no specific recollection regarding what he told Petitioner in connection with the plea deal, but his general practice was to advise his clients of their sentencing exposure if convicted at trial. *See id.* at 586-87, 588-89, 590. On January 25, 2007, the Magistrate Judge issued a Report & Recommendation ("R&R"), concluding that Petitioner received effective assistance of counsel in connection with the plea advice. In doing so, the Magistrate Judge credited the testimony of

3

Petitioner's defense counsel regarding his general practice over that of Petitioner regarding his specific recollection of what his counsel had advised him. *See id.* at 590.

On February 22, 2008, the District Court rejected the findings in the Magistrate Judge's R&R and concluded that defense counsel was in fact ineffective because he did not adequately advise Petitioner regarding the plea offer. *Carrion v. Smith*, 537 F. Supp. 2d 518 (S.D.N.Y. 2008). Respondent appealed, and in an opinion dated December 8, 2008, we vacated the District Court's decision, reasoning that "in determining that [defense counsel] did not advise [Petitioner] of his sentencing exposure, [the District Court] necessarily credited [Petitioner's] testimony." *Carrion*, 549 F.3d at 588. We held that this was error because the District Court made its "own credibility findings contrary to those made by the magistrate judge without hearing the witnesses [it]self." *Id.* at 590. We explained, "For the district court, upon remand, to adhere to its own credibility conclusions, as opposed to those found by the magistrate judge, the district court would need to conduct a renewed hearing to appraise the credibility of the witnesses." *Id.* Accordingly, we vacated the District Court's judgment and remanded for it "either to enter judgment in accordance with the magistrate judge's findings, or to conduct a new hearing as a basis for whatever findings the court may then make." *Id.*

In accordance with our remand instructions, the District Court held an evidentiary hearing where several witnesses testified, including Petitioner and his defense counsel. The District Court ultimately concluded that defense counsel rendered ineffective assistance of counsel by not providing Petitioner with adequate advice regarding the plea deal. Respondent timely appealed to this Court.

4

"We review a district court's decision to grant or deny a habeas petition de novo and its findings of fact for clear error." *Hemstreet v. Greiner*, 491 F.3d 84, 89 (2d Cir. 2007), *cert. denied*, 128 S. Ct. 962 (2008). Under *Strickland*, to establish ineffective assistance, Petitioner "must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Carrion*, 549 F.3d at 588 (internal quotation marks omitted). "To satisfy the first prong–the performance prong–the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Such errors include 'omissions [that] cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness.'" *Id.* (quoting *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003)).

In the context of a defense counsel's advice surrounding a plea offer, "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (internal quotation marks omitted) (quoting Model Rules of Professional Conduct Rule 1.4(b) (1995)). "The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case . . . [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision." *Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996) (internal quotation marks omitted) (quoting Anthony G. Amsterdam, Trial Manual 5 for the Defense of Criminal Cases (1988)), *cert. denied*, *Keane v. Boria*, 521 U.S. 1118 (1997). "As part of this

advice, counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy*, 208 F.3d at 45 (internal citations omitted). "[K]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *U.S. v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (per curiam) (citation and internal quotation marks omitted).

To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[A] significant sentencing disparity [between what is provided for under a plea agreement and the sentence imposed after trial,] in combination with defendant's statement of his intention [that he would have pled guilty] is sufficient to support a prejudice finding." *Pham v. U.S.*, 317 F.3d 178, 182 (2d Cir. 2003); *see also Mask v. McGinnis*, 233 F.3d 132, 141 (2d Cir. 2000), *cert. denied*, 534 U.S. 943 (2001).

"AEDPA, however, requires more than a conclusion that counsel's performance was constitutionally inadequate." *Carrion*, 549 F.3d at 591 n.4; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[P]etitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief. That increment, however, need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Jones v. West*, 555 F.3d 90, 96 (2d Cir. 2009) (citations and internal quotation marks omitted). Nevertheless, "because the *Strickland* standard is a general standard, a state court has even more

6

latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009).

Here, it is clear that it would be an unreasonable application of *Strickland* to reject Petitioner's claim assuming that (1) defense counsel failed to advise him of his sentencing exposure if convicted at trial, and (2) had Petitioner known of his sentencing exposure, he would have accepted the plea deal. Indeed, Petitioner ultimately received a sentence of 125 years to life after being convicted at trial, and defense counsel admitted that he recognized at the time of representation that "barring some miracle from God," Petitioner would be convicted at least of the drug charge, which would alone carry a minimum of fifteen years to life, more than the ten years to life offered in the plea deal. Under these circumstances and assuming those facts, the legal determination that habeas relief should be granted is correct. *See Pham*, 317 F.3d at 182; *Mask*, 233 F.3d at 141; *Purdy*, 208 F.3d at 44-45, 47; *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999); *Gordon*, 156 F.3d at 380; *Boria*, 99 F.3d at 496-97.

Respondent argues, however, that the District Court's factual findings underlying its conclusion that defense counsel was ineffective are clearly erroneous. "A finding of fact is not clearly erroneous unless 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Krieger v. Gold Bond Bldg. Prods., a Div. of Nat'l Gypsum Co.*, 863 F.2d 1091, 1098 (2d Cir. 1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Drake v. Portuondo*, 553 F.3d 230, 239-40 (2d Cir. 2009). "In reviewing findings for clear error, we are not allowed to second-guess either the trial court's credibility assessments or its choice between permissible competing inferences." *Amalfitano v.*

7

*Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Ceraso v. Motiva Enters., LLC*, 326 F.3d 303, 316 (2d Cir. 2003)); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

Respondent argues that with respect to *Strickland*'s deficiency prong, the District Court committed clear error in finding that defense counsel did not advise Petitioner as to his sentencing exposure if convicted at trial. We disagree because the District Court's finding in this respect is based upon evidence in the record and its own credibility determinations. Specifically, the District Court credited Petitioner's testimony on this topic, including that defense counsel did not advise him that the minimum sentence for the drug charge was fifteen years to life and that his conviction on that count was virtually inevitable. *Carrion*, 644 F. Supp. 2d at 460, 467. Although the record reveals that defense counsel "remembered, in general terms, a discussion 'as to the substantial sentence that [Petitioner] could receive if he were convicted,'" *id.* at 461 (quoting transcript available at JA 270-71), defense counsel testified repeatedly that he had no specific recollection of his discussions with Petitioner concerning the sentencing ranges for the various counts with which Petitioner was charged, *id.* Defense counsel could only testify to his general practice. The District Court recognized that defense counsel's general practice testimony was probative, particularly in light of the significant lapse of time since the representation, but found Petitioner's testimony more credible. *Carrion*, 644 F. Supp. 2d at 467 ("Although this testimony is self-serving, I find it credible, especially given his demeanor in testifying and Carrion's other corroborating testimony that he lacked the sophistication to invent."); *see also Cullen*, 194 F.3d at 407 (explaining that although a habeas petitioner's testimony is often self-serving, "it ought not to be rejected solely on this

8

account"). At bottom, the District Court credited Petitioner's testimony regarding his specific recollections over that of defense counsel's testimony regarding his general practice. There is no basis in this record to disturb this credibility finding. *See, e.g.*, *Anderson*, 470 U.S. at 575 ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.").

With respect to *Strickland*'s prejudice prong, Respondent argues that the District Court committed clear error in finding that "had [Petitioner] known of the consequences of going to trial, he would have accepted the plea offer" and that he was not influenced in deciding not to plead guilty by the prospect of a recovery in a civil suit against the City. *Carrion*, 644 F. Supp. 2d at 460, 471-72; *see also Cullen*, 194 F.3d at 405 ("the determination of the likelihood that [the petitioner] would have accepted the plea bargain if he had been fully informed of its terms and accurately advised of the likely sentencing ranges under the plea bargain and upon conviction after trial was, like all predictions of what might have been, a factual issue, albeit a hypothetical one."). But this finding is also supported by the record and based on the District Court's credibility determinations. *Carrion*, 644 F. Supp. 2d at 471. Accordingly, the District Court's findings are not clearly erroneous. *See, e.g.*, *Anderson*, 470 U.S. at 573-74 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").[1]

---

[1] Respondent also argues that the District Court erred in concluding that, under the circumstances of this case, defense counsel's failure to advise Petitioner to take the plea deal was constitutionally deficient, even if defense counsel had advised Petitioner regarding his sentencing exposure if convicted at trial. *Carrion*, 644 F. Supp. 2d at 468-70. We need not reach this question because, as explained, we hold that the District Court did not commit clear error in finding that

9

Finally, we hold that the District Court did not exceed its allowable discretion in crafting a remedy. "We review the district court's choice of [a habeas] remedy . . . for an abuse of discretion." *Gordon*, 156 F.3d at 381 (explaining that district courts have "considerable discretion in fashioning a remedy" where a Sixth Amendment violation occurred (quoting *United States v. Day*, 969 F.2d 39, 47 (3d Cir. 1992)); *see also Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). "[W]here there has been a finding of ineffective assistance of counsel in a [habeas] proceeding, the remedy 'should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests,'" *Gordon*, 156 F.3d at 381 (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)). "That remedy is one that as much as possible restores the defendant to the circumstances that would have existed had there been no constitutional error." *U.S. v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000).

Here, Petitioner was sentenced to a much harsher term of imprisonment as a result of not accepting the plea deal (125 years to life). In fashioning its remedy, the District Court focused on reducing Petitioner's sentence to that contemplated by the original plea offer (ten years to life). Respondent argues that this was an abuse of discretion because the terms of the plea offer required that Petitioner allocute to the entire indictment. It argues that the court was required to vacate Petitioner's convictions in their entirety, to allow him to plead guilty to criminal possession in the second degree and to allocute to the remaining charges of the indictment, and only then could Petitioner be appropriately resentenced. We disagree. Although there may be circumstances where

---

defense counsel did not advise Petitioner of his sentencing exposure if convicted at trial, and it would be unreasonable to hold that, under the circumstances of this case, this failure does not amount to ineffective assistance of counsel.

a court's refusal to implement conditions of a plea bargain that remain easy to perform would constitute an abuse of discretion, the facts of this case do not support such a conclusion. The remedy thus "restores the defendant to the circumstances that would have existed had there been no constitutional error," *Carmichael*, 216 F.3d at 227, but concomitantly "[does] not unnecessarily infringe on competing interests," *Gordon*, 156 F.3d at 381.

We do note that the District Court, *sua sponte*, ordered that Petitioner "immediately be summoned to the Parole Board to determine whether he is eligible for release . . . ." *Carrion*, 644 F. Supp. 2d at 474. We do not read that aspect of the District Court's decision to direct that Petitioner be entitled to procedures or treatment with respect to the decision of the Parole Board other than that required under New York law. *See* N.Y. EXEC. LAW § 259, *et seq.* (McKinney's 2009).

Furthermore, while the District Court stated that the Parole Board will determine Petitioner's eligibility for parole "in light of his newly imposed sentence," *Carrion*, 644 F. Supp. 2d at 474, we do not read this aspect of the court's order to abrogate, or in any way alter, the factors that the Parole Board is entitled to consider in adjudicating the parole decision of an eligible inmate. Under New York law, the Parole Board will have access to Petitioner's criminal record and the circumstances of his crime, as well as various other record materials that will allow it to make an informed decision as to whether, and when, the Petitioner is fit for parole. *See* N.Y. EXEC. LAW § 259, *et seq*. Although Petitioner is *eligible* for release, the decision to actually grant him parole remains within the discretion of the Parole Board. Inmates in New York have no liberty interest in parole because

11

under New York law there is no entitlement to release. *See Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001).

We have considered Respondent's remaining arguments on appeal and find them to be meritless. Accordingly, we AFFIRM the District Court's Opinion and Order.

<div style="margin-left: 40%;">

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

</div>